AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

SHON ROWELL

**CRIMINAL COMPLAINT**

CASE NUMBER: MJ 04-809 MBB

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___March 1, 2004___ in ___Suffolk___ county, in the _____ District of ___Massachusetts___ defendant(s) did, (Track Statutory Language of Offense) possess in or affecting commerce various rounds of ammunition after having been convicted in any court of a crime punishable by imprisonment for a term exceeding one year

in violation of Title ___18___ United States Code, Section(s) ___922(g)(1)___.

I further state that I am a(n) ___Special Agent, ATF___ and that this complaint is based on the following facts:
Official Title

See attached affidavit of ATF Special Agent Lisa Rudnicki

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_Lisa A Rudnicki_
Signature of Complainant

Sworn to before me and subscribed in my presence,

04-07-2004  @ 11:40 AM       at       Boston, Massachusetts
Date                                   City and State

MARIANNE B. BOWLER
CHIEF U.S. MAGISTRATE JUDGE                  _Marianne B. Bowler, USMJ_
Name & Title of Judicial Officer                Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT

I, Lisa Rudnicki, having been duly sworn, on oath depose and state that:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and have been so employed since 1996. In that capacity, I investigate numerous violations of the federal firearms statutes and have participated in numerous investigations relating to the unlawful possession of firearms.

2. I am aware based on my training and experience that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony offense to possess a firearm or ammunition in or affecting interstate commerce. Having so stated, I make this affidavit in support of a complaint charging an individual named Shon Rowell ("ROWELL") with being a felon in possession of ammunition in violation of that statute.

3. The statements contained in this affidavit are based on my own investigation and on information provided to me by officers of the Boston Police Department. This affidavit is submitted for the limited purpose of establishing probable cause to believe ROWELL violated 18 U.S.C. §922(g)(1), and therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. At approximately 1:00 a.m. on March 1, 2004, Boston Police Officer(BPD) Roland Robinson responded to an armed robbery call at an apartment building at 141 Homestead Street in Roxbury. When he arrived there he spoke with a woman named Willunda Jones. Ms. Jones stated that she was in the hallway of the building when a man and woman she knew as "Jackie" approached her and her cousin. She stated the man placed a black gun to her head and told her he was a murderer, and demanded her money. "Jackie" then went through Ms. Jones's jacket and purse and took, among other things, $120.00 in cash, lottery tickets, a pack of Newport cigarettes, and a set of house keys with an attached tag that bore the name "Lugz," as well as attached consumer cards from Stop and Shop and Osco. Ms. Jones described the male as being slim and having medium black colored skin, approximately 32 years old, and estimated that he was about five feet seven inches tall and 120 pounds. She stated that "Jackie" was a slender light-skinned black person, about five feet six inches in height, and wearing a brown trench coat with all black underneath.

5. Approximately three hours later, at about 4:20 a.m., BPD Officers Brian Smigielski and Brian Farrell, along with Officer Robinson, responded to a radio call regarding a person with a gun at 25 Wayne Street, apartment #9, in Roxbury. Upon their arrival, the officers spoke to a male named Terrence Phillips. Mr. Phillips stated that he had gone to apartment #9 in an

attempt to locate an ex-girlfriend named Kiet "Butter" Larkins, whom he understood to reside in that apartment. He stated that when he knocked on the door, however, a male whom Mr. Phillips knew as "Rob," but who was later identified as ROWELL, opened the door and told him that Ms. Larkins was not there. When Mr. Phillips persisted, ROWELL produced a black handgun, pointed it at him, and told him to "Get the fuck out of here." Mr. Phillips stated that he then fled and called "911." Officers learned from Mr. Phillips that ROWELL was still inside the apartment and they immediately went to the unit and knocked on the door and announced their presence. ROWELL refused to open the door, however, and officers proceeded to set up a perimeter around the building. As they were doing so, ROWELL exited the apartment and confronted the officers. A violent struggle ensued but ROWELL was eventually subdued and restrained.

6. Officer Smigielski immediately entered the apartment to conduct a protective sweep and observed a black female later identified as Jacqueline Santiago. Ms. Santiago did not reside in the apartment but stated that Ms. Larkins, the woman that Mr. Phillips had come to see, is her cousin and a tenant of the apartment along with another woman. Officers subsequently transported ROWELL and Ms. Santiago to the Area B-2 police station in Roxbury.

7. Once at the station, officers created two separate photo arrays. Each photo array contained nine photographs; one contained a photograph of ROWELL and eight other men who generally matched his physical description; the second contained a photograph of Jacqueline Santiago and eight other women who generally matched her physical description. Officers showed the array containing the men to Terrence Phillips and he positively identified ROWELL as the person who pointed the black gun at him. Mr. Phillips then circled the picture of ROWELL and placed his initials next to the picture to reflect his identification.

8. Officers also brought in Willunda Jones, and showed her each photo array separately. After viewing the first array, Ms. Jones positively identified ROWELL as the person who put a black handgun to her head and robbed her in the hallway hours earlier at 141 Homestead Street, and she accordingly circled the picture and placed her initials next to it. She then viewed the second array and positively identified Jacqueline Santiago as the female who was with ROWELL and who went through her jacket and pocketbook. As with the first array, Ms. Jones circled the picture of Jacqueline Santiago and placed her initials next to it to reflect her identification.

9. Based on the foregoing, and aware that ROWELL did not have a firearm on his person when he was arrested, officers, having secured the apartment, obtained a warrant that day to

search apartment #9 at 25 Wayne Street for evidence of a firearm as well as any of the items taken from Ms. Jones during the hallway robbery at 141 Homestead Street.

10. Officers executed the warrant at approximately 1:30 p.m. on March 1, 2004. Among other things, BPD Detective Marc Cooper searched the rear bedroom and recovered from underneath a bureau a black, Smith and Wesson Model 69, 9mm handgun, bearing the serial number A352194, loaded with eight rounds of ammunition in the magazine and one live round in the chamber. Detective Cooper also recovered Willunda Jones's set of keys and a lottery ticket from the top of the bureau.

11. Based on the foregoing, I have probable cause to believe that the loaded firearm Detective Cooper recovered during the search is the same firearm ROWELL used to rob Willunda Jones at 141 Homestead Street, and later pointed at Terrence Phillips in the doorway of apartment #9 at 25 Wayne Street. On March 8, 2004, BPD Detective Carl Washington from the BPD Ballistician's Office successfully test fired the firearm using two rounds of stock ammunition. Detective Washington also examined the nine rounds of ammunition that were found in the gun and determined that they were in fact genuine.

12. On March 9, 2004, ATF Special Agent Phillip Ball examined the firearm and ammunition to determine their place of manufacture and interstate history. S.A. Ball determined that

the Smith and Wesson firearm was manufactured in Massachusetts but he was unable to determine whether the firearm has ever left the state. With respect to the nine rounds of ammunition, however, S.A. Ball determined from markings on the head stamps of the ammunition that five of the rounds were manufactured by Remington Peters, two rounds were made by Federal, one round was made by Smith and Wesson, and one round was made by Winchester. I am aware as a result of my investigation that none of these companies manufactures ammunition in Massachusetts, meaning that each round of ammunition crossed a state line prior to being found in the Smith and Wesson firearm on March 1, 2004.

13. Finally, I have reviewed ROWELL's criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that ROWELL was convicted in 1993 in the Suffolk Superior Court on charges of Distribution of Class B (cocaine) and armed robbery, both of which are punishable by more than a year in jail.

14. Based on the foregoing, I have probable cause to believe that, on or about March 1, 2004, Shon Rowell, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting

commerce, ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

_____
LISA RUDNICKI
Special Agent, ATF

Sworn and subscribed to before me this 7th day of April, 2004.

_____
MARIANNE B. BOWLER
Chief, U.S. Magistrate Judge

7