UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


MAGISTRATE JUDGE NO. 04-809-MBB



**UNITED STATES OF AMERICA**

**v.**

**SHON ROWELL**


**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**


**APRIL 27, 2004**


**BOWLER, Ch.U.S.M.J.**

On or about April 8, 2004, defendant Shon Rowell (the
"defendant") was arrested pursuant to a Criminal Complaint issued
in this district on April 7, 2004, charging that he "did possess
in and or affecting commerce various rounds of ammunition after
having been convicted in any court of a crime punishable by
imprisonment for a term exceeding one year" in violation of Title
18, United States Code, Section 922(g)(1).

The defendant had his initial appearance before this court

1

on April 8, 2004.  He was represented by court appointed counsel.
The government moved to detain the defendant pursuant to 18
U.S.C. §§ 3142(f)(1)(A), (f)(1)(B), (f)(1)(D) and (f)(2)(A).

On April 12, 2004, this court conducted a detention
hearing.  At the detention hearing the defendant was represented
by court appointed counsel.  The government put forth one witness
and the defendant did not call any witnesses.  At the conclusion
of the hearing this court made a finding of probable cause and
took the issue of detention under advisement.

## DISCUSSION

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he
judicial officer may not impose a financial condition that
results in the pretrial detention of the person."  Thus, a
defendant must be released under the provisions of 18 U.S.C. §
3142(b) or (c), or be detained pending trial under the
provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant
to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered
detained pending trial if the judicial officer finds one of the
following three conditions to be true that: (1) by clear and
convincing evidence, after a detention hearing under the
provisions of § 3142(f), ". . . no condition or combination of
conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will

2

reasonably assure the safety of any other person or the
community . . .;" (2) by <u>a preponderance of</u> the evidence, after
a detention hearing under the provisions of 18 U.S.C. § 3142(f),
". . . no condition or combination of conditions (set forth
under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the
appearance of the person as required . . .;" or (3) there is a
serious risk the defendant will flee.[1]  This determination is
made by the court at the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case
that:

     (1)   involves a crime of violence within the meaning of 18
U.S.C. § 3156(a)(4);[2]

---

[1] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f). In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.) By not requiring that same standard <u>vis</u> <u>a</u> <u>vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applied. That is precisely the holding in the Second Circuit. See <u>e.g.</u>, <u>United States v. Jackson</u>, 823 F.D 4, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986), <u>cert</u>. <u>dismissed</u>, 107 S.Ct. 562 (1986); <u>see also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
   (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

   (B) any other offense that is a felony and that, by its nature, involves a

(2)   involves an offense punishable by death or life imprisonment;

(3)   involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is' imprisonment for ten years or more;[3] or

(4)   involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).


C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and

---

substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 3156(a)(4).

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States v. Moss,</u> 887 F.2d 333, 336-7 (1st Cir. 1989).

the safety of any other person and the community, this court
must take into account:

> (1) the nature and circumstances of the offense
> charged, including whether the offense is a crime
> of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the
> accused;
>
> (3) the history and characteristics of the
> person, including;
>
> > (A) his character, physical and mental
> > condition, family ties, employment,
> > financial resources, length of residence in
> > the community, community ties, past
> > conduct, history relating to drug or
> > alcohol abuse, criminal history, and record
> > concerning appearance at court proceedings;
> > and
> >
> > (B) whether, at the time of the current
> > offense or arrest, he was on probation, on
> > parole, or other release pending trial,
> > sentencing, appeal, or completion of
> > sentence for an offense under Federal,
> > State or local law; and
>
> (4) the nature and seriousness of the danger to
> any other person or the community that would be
> posed by the person's release.

18 U.S.C. § 3142(g).


    D.  The burden of persuasion remains with the government to
establish "that no condition or combination of conditions will
reasonably assure the appearance of the person as required and
the safety of any other person and the community."  The burden
then rests on the defendant to come forward with evidence

indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of evidence and with respect to dangerousness by clear and convincing evidence. See supra footnote 3. This court must then weigh all relevant factors [set forth under §3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. United States v. Patriarca, 948 F.2d 789, 794 ( Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215.

98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's
> dangerousness is described throughout
> this chapter by the term "safety of
> any other person or the community."
> The reference to safety of any other
> person is intended to cover the
> situation in which the safety of a
> particular identifiable individual,

> perhaps a victim or witness, is of
> concern, while the language referring
> to the safety of the community refers
> to the danger <u>that the defendant might
> engage in criminal activity to the
> detriment of the community</u>.  The
> Committee intends that the concern about
> safety be given a broader construction
> than merely danger of harm involving
> physical violence....  The Committee
> also <u>emphasizes</u> that the risk that a
> defendant will <u>continue to engage</u> in
> drug trafficking constitutes a danger to
> the "safety of any other person or the
> community."

<u>Id</u>. (Emphasis added; footnotes omitted); <u>see</u> <u>United States v.</u>

<u>Patriarca</u>, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to

community does not refer only to risk of physical violence); <u>see</u>

<u>also</u> <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990)

(stating danger in context of 18 U.S.C. § 3142(g) not meant to

refer only to physical violence); <u>United States v. Hawkins</u>, 617

F.2d 59 (5th Cir.), <u>cert. denied</u>, 449 U.S. 962 (1980)

(trafficking in controlled substances).[4]

The issue critical to determining whether to detain a

defendant is therefore, whether, with respect to the defendant,

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. § 3142(f)(1)(A) through 3142(f)(1)(D).  That is to say, even if a detention hearing is appropriate under 18 U.S.C. § 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section.  See <u>United States v. Ploof</u>, 851 F.2d 7 (1st Cir. 1988).

based on the guidelines set forth <u>supra</u> in part C of this Order,
any condition or combination of conditions of release exist that
will reasonably assure the safety of any person and the
community; and the presence of the defendant.  18 U.S.C. §
3142(e).

    E.  Further, the judicial officer must consider whether the
crime charged is a "crime of violence" within the meaning of 18
U.S.C. § 3156 where the government has raised 18 U.S.C. § 3142
(f)(1)(A) as a basis for pretrial detention.  Thus, where the
government moves for pretrial detention "on dangerousness
grounds, it can be ordered only in cases involving one of the
circumstances set forth in § 3142(f)(1)," <u>United States v.
Ploof</u>, 851 F.2d 7, 11 (1st Cir. 1988), which, in this instance,
involves the circumstance of whether the offense in the case at
bar is a "crime of violence" under § 3142(f)(1)(A).

    Cases establish that the circumstances in which a defendant
committed a particular offense do not determine whether the
crime of which the defendant is accused is a "crime of violence"
as defined in 18 U.S.C. § 3156(a)(4).  Rather, this court must
categorically examine the nature of the offense to determine
whether it is or is not a "crime of violence" within the meaning
of 18 U.S.C. § 3142(f)(1)(A).  <u>See</u> <u>United States v. Johnson</u>, 704
F.Supp. 1398, 1400 (E.D. Mich. 1988) (recognizing that each

"generic offense must be categorized as either a 'crime of violence' or not a crime of violence" under Bail Reform Act); see also United States v. Bell, 966 F.2d 703, 706 (1st Cir. 1992) (adopting categorical approach to assess whether offense is "crime of violence" under sentencing guidelines).

The Bail Reform Act's definition of the term "crime of violence" is twofold. An offense is a "crime of violence" if it is:

> (A) an offense that has as an element of the offense the use, or attempted use, or threatened use of physical force against the person or property of another, or

> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

The sentencing guidelines define the term "crime of violence" in a manner which is similar to the definition of the term in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B).[5]

This court finds that the offense charged in the Indictment constitutes a "crime of violence" within the meaning of the Bail

---

[5] The sentencing guidelines define a "crime of violence" as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.C.A. § 4B1.2(1) (emphasis added).

Reform Act, 18 U.S.C. § 3142(f)(1)(A).

II.   The defendant, Shon Rowell, is 34 years of age.  He was born in Boston on January 17, 1970.  He attended Boston Latin High School until the tenth grade and earned a GED in 1995 while incarcerated.

The defendant resides in Mattapan with his mother and sister.  The defendant's father is deceased.  The defendant has no employment history.  He lists no financial assets or liabilities.  By his own admission he has used marijuana on a daily basis since 1981.

The defendant has a long and serious criminal record.   The defendant's juvenile record includes adjudications of delinquency for possession with intent to distribute a Class A controlled substance (twice), threatening and possession of a Class B controlled substance with intent to distribute.

The defendant's adult record in the Commonwealth includes convictions for receiving stolen property, conspiracy to violate the controlled substances laws, possession with intent to distribute a Class A controlled substance, possession of a Class B controlled substance, possession of a Class D controlled substance, firearm violation, possession of ammunition, possession of a firearm, robbery, assault and battery with a dangerous weapon, armed robbery, distributing and dispensing a

Class B controlled substance and shoplifting.

In addition to his state record the defendant was convicted of a firearm violation in this court in 1992. The defendant's criminal history also includes at least ten defaults and one probation violation.

III. The relevant evidence at the detention hearing showed the following.

The government called Special Agent Lisa Rudnicki ("Rudnicki") of the Bureau of Alcohol, Tobacco and Firearms of the United States Department of the Treasury ("ATF"). She testified that she has been employed by ATF for over 11 years, the last eight of which have been in the role of a special agent. She stated that she is presently assigned to a gun group focusing on gun related gang activity in Boston.

Rudnicki testified that she is the case agent assigned to the defendant's case and in the course of her investigation she reviewed various reports of the Boston Police Department ("BPD"). In addition she spoke with the arresting officer, Brian Smiegelski ("Smiegelski") of the BPD, BPD Detective Mark Cooper ("Cooper") and BPD Sargent Greg Gallagher ("Gallagher"). In addition Rudnicki added that she looked at the firearm and ammunition in question along with the ATF special agent who performed the interstate nexus examination. Rudnicki also

testified that she reviewed the defendant's prior criminal record.

According to Rudnicki, at approximately 1:00 a.m. on March 1, 2004, officers of the BPD responded to a call reporting an incident at 141 Homestead Street, a multi-unit building, in Roxbury. Rudnicki noted that Smiegelski was one of the responding BPD officers.

In further testimony Rudnicki, who was not present at the scene, stated that at approximately 1:00 a.m. two females, Willunda Jones ("Jones") and her cousin, were in a hallway at 141 Homestead when they were approached by a man and a woman. Jones knew the woman as "Jackie." The man put a gun to Jones' head while the woman went through Jones' coat and purse, taking $120 in cash, lottery tickets, keys with attached consumer cards and a package of Newport cigarettes. According to Rudnicki, the man told Jones he was a murderer. Rudnicki testified that Jones described the male, as short, slim and approximately 120 pounds and the woman as black with light skin, approximately five feet six inches and 120 pounds.

Rudnicki testified that approximately three hours later at 4:20 a.m. the BPD responded to a radio call at 25 Wayne Street, a multi-unit apartment building, regarding a man with a gun. The victim, Terrence Phillips ("Phillips"), told police that he went to apartment nine to look for an exgirlfriend. He was told

that she was not there by a black male Phillips knew as "Rob."
Rob opened the apartment door, showed a gun and told Phillips to
get out.  Phillips retreated to a pay telephone where he placed
a call to the police.

In further testimony Rudnicki stated that the BPD arrived
and Rob, who is now known to be the defendant, refused to open
the apartment door.  A entry team was called and the officers
commenced establishing a perimeter.  Before the perimeter could
be completed the defendant came out of the apartment and a
violent struggle ensued.  The defendant and the officers fell
down the stairs and the defendant was eventually restrained.

Rudnicki stated that a photo array, prepared by Cooper, was
presented to Jones by Gallagher.  She identified the defendant
and Jacqueline Santiago as the man and woman who had robbed her.
Phillips also identified the defendant from the photo array.
Both Jones and Phillips described the black handgun wielded by
the defendant.

In further testimony Rudnicki stated that Cooper prepared a
search warrant for the premises of apartment nine at 25 Wayne
Street.  The search warrant sought the firearm and the stolen
items.  The search warrant was executed on March 1, 2004, at
1:00 p.m.  Police found a Smith and Wesson black handgun under a
bureau in a rear bedroom.  The police also recovered the keys
with attached tags, lottery tickets and a package of Newport

cigarettes on the bureau, which was located in the rear bedroom. Rudnicki was shown a copy of the return of the search warrant, which was admitted as Government Exhibit # 1.

According to Rudnicki, when the gun, a 9 mm. Smith and Wesson, was found, it was loaded with eight rounds including one round in the chamber. She added that the gun was test fired by the BPD ballistician and was determined to be functional. The gun was manufactured in Springfield, Massachusetts. Both the BPD ballistician and ATF Special Agent Philip Ball examined the ammunition and determined that all of the rounds of ammunition were manufactured outside of Massachusetts.

Rudnicki testified that she has examined the defendant's prior criminal record and determined that he has prior conviction for being a felon in possession of a firearm.

On cross examination it was established that Rudnicki has no personal knowledge of the events of March 1, 2004.


IV.    The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(B), (f)(1)(D) and (f)(2)(A). The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community.

In contradistinction, with regard to risk of flight the court need only find by a preponderance of evidence that the

defendant, if released, constitutes a serious risk of flight or failure to appear.  The two different standards are used because of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

A. <u>Danger to the Community</u>

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The weight of the government's case against the defendant is strong.  Two individuals, Jones and Phillips, who observed the defendant with a handgun identified him from a photo array. The firearm was recovered, pursuant to a search warrant, in the apartment where the defendant was apprehended after a violent struggle.  When the weapon was recovered, it was loaded with eight rounds of ammunition and located in very close proximity to the three items stolen from Jones several hours earlier.

The defendant has a serious criminal record including

15

convictions for conspiracy to violate the Controlled Substances Act, possession of a Class B controlled substance, manufacturing of a Class B controlled substance, robbery, armed robbery and assault with a dangerous weapon. But most significantly, the defendant has a prior state firearm conviction and a federal conviction for being a felon in possession of a firearm. Despite this history it appears that the defendant is unable to refrain from possessing a firearm and ammunition.

In addition, it appears that the defendant has a strong proclivity for violent behavior, based on his prior criminal record and on the circumstances of the events on March 1, 2004. The defendant threatened and robbed Jones displaying a gun, three hours later he threatened Phillips with a gun and when apprehended by the BPD a violent struggle ensued. The defendant's conduct indicates that he is unable to refrain from violent criminal behavior and to stay away from firearms and therefore he constitutes a serious danger to the community.

Based on the totality of the evidence the government has satisfied this court by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any person or the community if the defendant is released.

B. <u>Risk of Flight</u>

16

Next, this court turns to risk of flight.

Although the defendant has spent his whole life in Boston and has familial ties to the community, the defendant's criminal history is replete with defaults.  The defendant is 34 years old and has never worked.  By his own admission he has used marijuana on a daily basis since 1981.  There is nothing in the defendant's most recent past to suggest that he can be relied upon to appear as required.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

V. Conclusion

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition, this court has found, at least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the

17